1
2
3
4
5
6
7

**KEKER, VAN NEST & PETERS LLP**
Elliot R. Peters (SBN 158708)
Eric H. MacMichael (SBN 231697)
Franco E. Muzzio (SBN 310618)
Maile Yeats-Rowe (SBN 321513)
Paul von Autenried (SBN 335917)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415.391.5400
Facsimile: 415.397.7188

*Attorneys for Arash Ferdowsi and
Arash Ferdowsi Revocable Trust*

**GREENBERG TRAURIG, LLP**
Karin L. Bohmholdt (SBN 234929)
Nour Hamida (SBN 329655)
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310.586.7700
Facsimile: 310.586.7800

*Attorneys for JPMorgan Chase Bank, N.A.*

8
9
10
11

**BALLARD SPAHR LLP**
Scott S. Humphreys (SBN 298021)
Brianna R. Howard (SBN 314642)
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

12
13

*Attorneys for Federal Deposit Insurance
Corporation as Receiver for First Republic Bank*

14

**UNITED STATES DISTRICT COURT**

15

**NORTHERN DISTRICT OF CALIFORNIA**

16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| ARASH FERDOWSI and ARASH FERDOWSI REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>J.P. MORGAN CHASE BANK, NA, and FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR FIRST REPUBLIC BANK,<br><br>Defendants.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR FIRST REPUBLIC BANK,<br><br>Counterclaimant,<br><br>v.<br><br>ARASH FERDOWSI and ARASH FERDOWSI REVOCABLE TRUST,<br><br>Counterclaim Defendants. | Case No. 3:24-cv-04644-MMC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:       March 14, 2025<br>Time:       10:30 a.m. (Videoconference)<br>Judge:      Hon. Maxine M. Chesney<br><br>Complaint Filed: July 31, 2024<br>Cross-Complaint Filed: October 15, 2024<br><br>Trial Date:  None |

2884084

Pursuant to Fed. R. Civ. P. 26(a)(1), the Standing Order for All Judges of The Northern District of California, and Civil L.R. 16-9, Plaintiffs Arash Ferdowsi and Arash Ferdowsi Revocable Trust (together, "Ferdowsi" or "Plaintiffs") and Defendants JPMorgan Chase Bank, N.A. ("Chase") and Federal Deposit Insurance Corporation as Receiver for First Republic Bank ("FDIC-R," and together with Chase, "Defendants") hereby submit this Joint Case Management Statement in advance of the Case Management Conference on March 14, 2025.

## I.   INTRODUCTION

**_Plaintiffs' Statement_**:  In July 2024, Ferdowsi filed claims in an arbitration before the Financial Industry Regulatory Authority (FINRA Arbitration), seeking to remedy financial fraud committed by subsidiaries of the failed First Republic Bank (Subsidiaries) and the Subsidiaries' successors (JPM Wealth), **not** First Republic Bank itself.  Ferdowsi therefore brought his claims against JPM Wealth, pursuant to his arbitration agreements with those entities, and the investment adviser at JPM Wealth who perpetrated the fraud, **not** against First Republic Bank, an entirely separate corporate entity.  Knowing that FDIC-R would likely attempt to derail the FINRA Arbitration—because it has contractual indemnity obligations to Chase, the parent of JPM Wealth, and because it has consistently tried (and failed) to interfere in other suits against the Subsidiaries as a result—Ferdowsi seeks a declaratory judgment from this Court.  In particular, Plaintiffs seek a declaration that they may proceed with the FINRA Arbitration without interference from Defendants, including because the FINRA Arbitration is in no way barred or affected by the Receivership of First Republic Bank.

To date, FINRA has agreed with Plaintiffs and is moving forward with the Arbitration. Defendants, for their part, have tried to do exactly what Ferdowsi filed this case to prevent: derail the Arbitration.  In October, FDIC-R filed a notice in the Arbitration that purported to unilaterally "substitute" itself as a party, attempted to "remove" the Arbitration to this Court, and then sought a stay **and** dismissal.  *See Ferdowsi et al. v. Ahmed et al.*, No. 3:24-cv-07065-MMC (N.D. Cal. 2024) ("*Ferdowsi II*"), Dkt. 1 ¶¶ 3, 7, 14, 20.  Both this Court and FINRA rejected these baseless and improper maneuvers.  *See, e.g.*, *id.* Dkts. 24 (finding the Notice of Removal was "a nullity" and denying "administrative motion" for stay), 26 (approving joint stipulation to withdraw motion

2884084

to dismiss).  Defendants, having failed to stop the Arbitration, now want to race through discovery in this case, bypass the necessary factual development required by the issues presented here, and force the Court to engage in two staggered and uncoordinated rounds of summary judgment briefing on related issues.  Plaintiffs oppose that approach.

The parties' primary dispute in anticipation of the Case Management Conference concerns the case schedule.  *See infra* V (Motions), XVI.B (Scheduling).  Plaintiffs believe it is most efficient for the parties to file cross-motions for summary judgment *after* the parties have an adequate opportunity to conduct necessary discovery.  Plaintiffs have served written discovery on both Defendants (which Defendants have not yet responded to, having both sought extensions), and all parties have served initial disclosures, which name at least five potential witnesses likely to possess discoverable information.  It is clear that there are a number of factual disputes that must be resolved before the issues here can be decided.  Plaintiffs have no objection to this case moving expeditiously but will not agree to a schedule that defies logic and would prevent the Court from deciding these issues on a complete record.  Plaintiffs therefore propose that, assuming good faith responses from Defendants, fact discovery can be completed within six months and expert discovery can be completed within two months thereafter, at which point the parties will file cross-motions for summary judgment.  Defendants, in contrast, propose that fact discovery will close within two months, which is not realistic, and FDIC-R plans to file an early motion for summary judgment, which would effectively require the Court to endure two separate rounds of summary judgment briefing on related issues.  This is not an efficient use of the parties' or the Court's resources.[1]

Contrary to Defendants' suggestion below, Plaintiffs are not required to agree to "a faster schedule" in this case or "stay the FINRA [A]rbitration."  FINRA has repeatedly recognized that Ferdowsi is entitled to have his claims against JPM Wealth, which are not based on any conduct of the failed First Republic Bank, adjudicated in FINRA pursuant to his arbitration agreements.  Likewise, Plaintiffs are entitled to litigate this case based on a reasonable schedule, just like any

---

[1] FDIC-R first stated its intention to file an early motion for summary judgment in December 2024. Three months later, FDIC-R has still not done so.

2884084

1    other case.  Indeed, this Court has ***already*** denied the stay of the Arbitration that Defendants now

2    say is somehow necessary.  *See Ferdowsi II*, Dkt. 24.  And when JPM Wealth sought the same

3    stay in FINRA itself, FINRA rejected a stay, concluding the panel has a duty to keep the case on

4    track.  Defendants' pleadings—and their positions in anticipation of this Case Management

5    Conference—demonstrate that there are genuine disputes of material fact that must be resolved.

6    Fundamental fairness—along with the Federal Rules of Civil Procedure—require that this Court

7    be able to rule on cross-motions for summary judgment based on a complete factual record, not

8    the half-truths and shortcuts Defendants have presented thus far.  The Court should enter

9    Plaintiffs' proposed schedule, which will allow the parties to complete the necessary discovery in

10   an efficient manner and present their motions for summary judgment simultaneously.

11          ***Defendants' Statement:***  Plaintiffs' position is an obvious pretext for delay.  Plaintiffs

12   filed this action seven months ago, on July 31, 2024, to ask this Court to determine whether or

13   not his FINRA arbitration can proceed "without interference from Defendants."  The FDIC-R

14   counter-claimed, asserting essentially a mirror image of that claim.  If Plaintiffs genuinely want a

15   determination of these issues, they can easily propose a schedule that will result in decision from

16   this Court ***before*** the FINRA Arbitration begins in December 2025 (e.g., 4 months for fact

17   discovery, not 6 months).  Yet Ferdowsi is now doing everything possible to slow this Court's

18   resolution of these issues, all the while pressing forward with the FINRA arbitration. ***Notably,***

19   Plaintiffs' proposed hearing date for cross-motions for summary judgment is January 16, 2026,

20   the literal last day of the FINRA arbitration.[2]  This is no mere coincidence.  Ferdowsi is plainly

21   attempting to delay this action to ensure that the FINRA arbitration proceeds regardless of these

22   proceedings.[3]

23          Plaintiffs cannot have it both ways:  they can either agree to a faster schedule in this federal

24   _____

25   [2] The FINRA Arbitration commences on December 8, 2025 and ends on January 16, 2026.

26   [3] In another example, this CMC was originally set for January 24, 2025 at 10:30 a.m.  When the
     court had a scheduling conflict that required the hearing to be moved from 10:30 a.m. to 2:00 pm,
27   all of Plaintiffs' counsel claimed they were "not available" at that time, requiring this CMC to be
     moved to March 2025.  Ironically, Plaintiffs ignore this delay, while repeatedly attempting to
28   suggest that Defendants are causing delay by requesting a short two-week extension to respond to
     substantive discovery requests.

2884084

court action that would allow the Court to rule on summary judgment motions **before** the FINRA arbitration commences, or they can agree to stay the FINRA arbitration or continue it until mid-2026 to commence **after** the Court has ruled on cross-motions for summary judgment.

By seeking a declaration that Plaintiffs cannot proceed in FINRA Arbitration, the FDIC-R is simply performing its statutory duties of winding up the affairs of the failed First Republic Bank. When First Republic Bank failed on May 1, 2023, and the FDIC-R was appointed as Receiver, the FDIC-R succeeded by operation of federal law to all rights, titles, powers, privileges, assets and liabilities of the failed First Republic Bank pursuant to 12 U.S.C. § 1821(d)(2)(A). *See, e.g., FDIC v. North Savannah Properties, LLC*, 686 F.3d 1254, 1259-60 (11th Cir. 2012) ("The FDIC's appointment as receiver for a failed institution is not an ordinary transfer of interest.").

The failure of First Republic Bank and appointment of the FDIC as Receiver initiated the comprehensive claims resolution framework for all claims related to the acts or omissions of the failed First Republic Bank. Under federal law, the FDIC-R is charged with the duty of winding up First Republic Bank's affairs and is statutorily authorized to resolve all outstanding claims against First Republic Bank. *See* 12 U.S.C. § 1821(d)(2)(A)-(B) and § 1821(d)(3)-(13) (setting forth the mandatory administrative claims process under FIRREA).  As part of this framework, Congress established a mandatory administrative claims process for the Receiver to fairly and efficiently resolve all claims relating to failed banks. Under the FIRREA claims process, claimants with valid, proven and timely-submitted claims will receive distributions under a set priority list, after payment of administrative expenses, as follows: (1) Insured Depositors; (2) Uninsured Depositors; (3) General Unsecured Creditors; and (4) Stockholders.

To maintain confidence and stability in the banking and financial system in the wake of bank failures, Congress entrusted special powers to FDIC and established a federal statutory framework governing the resolution of failed depository institutions designed to promote the efficient, expeditious, and orderly liquidation of failed banks. *See* 12 U.S.C. § 1821(d)(2)(A)-(B) and § 1821(d)(3)-(13).  FIRREA's comprehensive framework promulgated a fair and consistent process for the Receiver to resolve claims and is "designed to give the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default." H.R. Rep.

1    No. 101-54, pt. I, at 330 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 126; *Pareto v. FDIC*, 139

2    F.3d 696, 701 (9th Cir. 1998). This includes "broad powers to determine claims asserted against

3    failed banks," allowing FDIC-R to respond nimbly in the face of the inherent uncertainty when a

4    financial institution fails. *Shaw v. Bank of Am.,* 946 F.3d 533, 537 (9th Cir. 2019).

5            In this federal action, the issues before the Court are legal issues that can be decided by

6    this Court as a matter of law.  This case has been pending for more than seven months, and

7    Defendants will have responded to Plaintiffs' first set of discovery requests prior to the CMC,

8    which confirms this case is ripe for quick resolution.  Plaintiffs do not need six months for

9    discovery; that timeline is a pretext to delay a ruling until the FINRA Arbitration is done and is

10   otherwise unnecessary to resolve the parties' core dispute.  An early summary judgment is further

11   appropriate in this case because the ultimate issue is whether Plaintiffs' claims in FINRA are

12   barred in any forum – whether in FINRA or in federal court – because those claims are subject to

13   FIRREA.  It is undisputed that Plaintiffs failed to exhaust the mandatory FIRREA administrative

14   claims process, which terminates their claims and deprives any forum of subject matter

15   jurisdiction over such claims.  *See, e.g.*, *McCarthy v. FDIC,* 348 F.3d 1075, 1081 (9th Cir. 2003)

16   (affirming district court's dismissal of the action for lack of subject matter jurisdiction where the

17   plaintiff failed to exhaust his claims under FIRREA); *see also* Standing Orders for Cases

18   Assigned to the Honorable Maxine M. Chesney ("Summary Judgment …. Examples of issues the

19   Court may deem appropriate for determination by separate motion, particularly if raised early in

20   the case, include … failure to exhaust administrative remedies.").

21           Importantly, Defendants expect that the FINRA panel would honor any court order

22   staying the FINRA arbitration pending the outcome of this matter, and the FINRA arbitrators

23   have indicated they will proceed until a court order is issued.

24   **II.      JURISDICTION AND SERVICE**

25           This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because (a) any civil

26   suit in which the Federal Deposit Insurance Corporation is a party in any capacity "shall be

27   deemed to arise under the laws of the United States," *see* 12 U.S.C. § 1819(b)(2)(A); and (b)

28   Plaintiffs' claim regarding FINRA Arbitration implicates the Financial Institutions Reform,

Recovery, and Enforcement Act of 1989 (FIRREA), a federal statute, *see* 12 U.S.C. § 1821. All parties have been served.

### III.    FACTS

***Plaintiffs' Statement***:  Plaintiff Arash Ferdowsi is the co-founder and former Chief Technology Officer of Dropbox.  On July 30, 2024, Ferdowsi initiated the FINRA Arbitration, seeking to recover hundreds of millions of dollars lost due to the financial fraud of his former investment adviser, Arif Ahmed (Ahmed), and the two entities Ahmed worked for:  J.P. Morgan Private Wealth Advisors LLC and its affiliated brokerage firm, J.P. Morgan Securities LLC (together, JPM Wealth).  JPM Wealth were previously subsidiaries of the failed First Republic Bank.  Defendants in this case are not parties to that arbitration.  Aware of Defendants' history of attempting to derail similar arbitrations against former subsidiaries of the failed First Republic Bank, Ferdowsi filed a Complaint in this Court seeking to prevent Defendants from improperly interfering with the FINRA Arbitration.

FINRA Arbitration.  Ferdowsi alleges in the FINRA Arbitration that Ahmed and JPM Wealth defrauded him and the Trust, causing damages of over $225 million.  Ferdowsi's claims include securities fraud under California and federal law, breach of fiduciary duty, and negligence and seek both compensatory and punitive damages.  Ferdowsi's FINRA Arbitration asserts no claim against, and alleges no wrongful act or omission by, either Defendant in this lawsuit: FDIC-R and Chase.  *See* Dkt. 1-2 (FINRA Arbitration No. 24-01651 Statement of Claim).

Ferdowsi's claims in the FINRA Arbitration are based on misconduct by Ahmed that occurred between April 2020 and October 2023.  Ahmed was Ferdowsi's financial adviser and broker-dealer throughout that period, working through entities whose names changed over time. Initially, Ahmed worked for two wholly owned subsidiaries of First Republic Bank ("Subsidiaries").  The Subsidiaries, which were not depository institutions and were not within the jurisdiction of the FDIC, operated one of the preeminent wealth management operations in the San Francisco Bay Area, with Ahmed as one of their most successful financial advisers.  In 2023, First Republic Bank failed, regulators closed it, and on May 1, 2023, the Federal Deposit Insurance Corporation was appointed Receiver for the failed bank.  Certain of the failed bank's

1   assets—including the Subsidiaries—were immediately sold to Chase in their entirety through a

2   Purchase and Assumption Agreement (P&AA).  In that sale, FDIC-R did not retain the liabilities

3   of the Subsidiaries; instead, the Subsidiaries were transferred to Chase as solvent, going concerns.

4   Later, the Subsidiaries merged into Chase's wealth-management division, JPM Wealth, where

5   Ahmed continued to act as Ferdowsi's investment adviser.

6          The harms at issue in the FINRA Arbitration began in 2020, when Ahmed, while working

7   for the Subsidiaries before the First Republic Bank failure, convinced Ferdowsi to entrust him as

8   an investment adviser.  Ferdowsi alleges that before, during, and after the First Republic Bank

9   failure in 2023, Ahmed fraudulently steered Ferdowsi into investing over $1 billion dollars in

10  low-performing "Market-Linked Investments" ("MLIs"), without ever informing Ferdowsi that

11  the MLIs were specifically designed to include exorbitant embedded fees paid to the Subsidiaries

12  (and, after May 1, 2023, to JPM Wealth).  For this harm, Ferdowsi now seeks compensatory and

13  punitive damages in the FINRA Arbitration.  To open accounts, Ferdowsi signed multiple

14  contracts with the Subsidiaries that contained arbitration agreements; those agreements enable

15  him to pursue claims against the Subsidiaries in an arbitration before FINRA, which he has done.

16         <u>Federal Complaint.</u>  The purpose of Ferdowsi's Complaint before this Court is to prevent

17  Defendants from improperly interfering with the FINRA Arbitration, as they have done before

18  and have repeatedly tried to do here.[4]  Specifically, Ferdowsi asks this Court to enter an order

19  declaring that (a) he has the right to maintain the FINRA Arbitration against JPM Wealth and

20  Ahmed without interference from Defendants and (b) the FINRA Arbitration is in no way barred

21

22  [4] For example, Judge Tigar previously rejected FDIC-R's attempt to stall a separate arbitration in
    which the Subsidiaries defended against counterclaims for fraud, breach of contract, and
23  constructive termination, among other things.  *See, e.g.*, *J.P. Morgan Securities, LLC et al. v.
    Nickel et al.*, No. 4:24-cv-02574-JST (N.D. Cal. Apr. 30, 2024) ("*Nickel*"), Dkt. 1 ¶¶ 36-37.  And
24  more than two months after Ferdowsi filed the Complaint presently before this Court, FDIC-R
    attempted to improperly interfere with the FINRA Arbitration by filing a notice that it had
25  "substituted" itself as a party into the arbitration and then seeking to remove the arbitration to this
    Court.  *See Ferdowsi et al. v. Ahmed et al.*, No. 3:24-cv-07065-MMC (N.D. Cal. 2024)
26  ("*Ferdowsi II*"), Dkt. 1 ¶¶ 3, 7.  This Court promptly rejected FDIC-R's improper removal,
    declaring it "in effect, a nullity," and FDIC-R agreed to dismiss the matter it had created through
27  its improper removal shortly thereafter.  *Ferdowsi II*, Dkts. 24, 25.  Thus far, the FINRA panel
    has refused to recognize FDIC-R as a party to the Arbitration.  In a recent order, the FINRA panel
28  stated that FDIC-R is "not a proper party to this action," and as a "non-party," FDIC-R has "no
    right to receive documents produced during the pendency" of the Arbitration.

1   or affected by the fact that Ferdowsi did not present his claims in the administrative claims

2   process of the First Republic Bank Receivership.  *See* Dkt. 1 at 14.

3           Defendants assert that Ferdowsi's claims cannot be brought in FINRA Arbitration because

4   they "relate to the acts and omissions of the failed First Republic Bank," and therefore must have

5   been first brought in the First Republic Bank Receivership, where any such claims are now time-

6   barred.  *See, e.g.*, Dkt. 26 at 3-5.  Defendants' premise is incorrect:  Ferdowsi's claims in FINRA

7   Arbitration allege misconduct by Ahmed and JPM Wealth (as successors in interest to the

8   Subsidiaries), ***not*** First Republic Bank, a distinct corporate entity.  Although the Subsidiaries

9   were subsidiaries of the failed First Republic Bank, they were never placed in any receivership:

10  they are not FDIC-insured depository institutions and thus by law cannot be placed in a

11  receivership under FIRREA, and they had no reason to be placed in a receivership, having

12  remained solvent before and after First Republic Bank's failure.  Accordingly, Defendants'

13  repeated reliance on *Benson*—which deals only with claims that are based on the acts or

14  omissions of failed depository institutions themselves—is misplaced and wrong.  *See Benson v.*

15  *JPMorgan Chase Bank, N.A.*, 673 F.3d 1207 (9th Cir. 2012) (requiring administrative exhaustion

16  for claims involving "conduct of the failed institution").  Ferdowsi is entitled to arbitrate his

17  claims not because of the entities he named in the FINRA Arbitration but because the claims

18  there are ***based on*** those entities'—and not First Republic Bank's—conduct.  And the P&AA

19  makes clear that the Subsidiaries were sold to Chase in their entirety—assets and liabilities

20  included—in accordance with the proper treatment of distinct corporate entities.  Put differently,

21  there is no other forum in which Ferdowsi could have brought his claims against the Subsidiaries,

22  and he is entitled to arbitrate those claims in FINRA pursuant to his agreements with them.

23          FDIC-R's motivation for its continued efforts to derail FINRA arbitrations related to the

24  Subsidiaries is clear: when selling the Subsidiaries to Chase, FDIC-R agreed to indemnify Chase

25  up to $500 million for certain claims related to the Subsidiaries' misconduct.  Accordingly,

26  FDIC-R may have a contractual obligation to indemnify Chase if Plaintiffs, or others with similar

27  claims, prevail in the FINRA Arbitration.  FDIC-R's game plan is clear, too.  In this Court, like in

28  *Nickel*, FDIC-R seeks a declaration that Ferdowsi's claims must first have been brought in the

1    "mandatory administrative claims process" of the First Republic Bank Receivership.  Dkt. 26 at 3.

2    It will then argue that Ferdowsi "did not submit a[n] [administrative] claim at any time," *see, e.g.*,

3    *id.* at 5, and that it is now too late to do so, *see* Dkt. 1 ¶ 7.  If Defendants succeed, they will leave

4    Ferdowsi with no forum to pursue the merits of his claims, even though his claims have nothing

5    to do with the failed First Republic Bank.  This Court should issue a declaration preventing

6    further improper attempts to derail the FINRA Arbitration.

7        Chase's claim below that Plaintiffs have tried to delay this case is disingenuous.  It was

8    *Defendants* who tried to interfere with the Arbitration through improper substitutions and

9    removals, which were soundly rejected by this Court and FINRA.  It was *Defendants* who tried to

10   stay this case and the Arbitration, which were similarly rejected.  And it was *Defendants* who

11   requested extensions of time to respond to discovery and have not responded to a single discovery

12   request, even though Plaintiffs shared drafts of those discovery requests months ago.  Defendants

13   should stop looking for ways to short-circuit this case and instead should focus on the merits.

14       ***Defendants' Statements*:**

15       FDIC-R's Statement: With the failure of First Republic Bank on May 1, 2023 – the

16   second-largest bank failure in United States history – and the appointment of FDIC as Receiver,

17   the landscape for the pursuit of claims against First Republic Bank fundamentally changed.

18   Specifically, the FDIC-R is charged with the duty of winding up First Republic Bank's affairs,

19   which includes the statutory authority and duty to resolve claims – including all claims touching

20   on acts or omissions of the failed bank. To that end, Congress established a mandatory

21   administrative claims process under FIRREA, which all persons asserting claims must exhaust

22   before commencing an action on a claim. 12 U.S.C. § 1821(d)(3)-(13). Congress placed within

23   FDIC-R's purview the resolution of all claims involving acts or omissions of a failed bank, even

24   in situations where a claimant nominally seeks relief against other parties. *See Benson v.*

25   *JPMorgan Chase*, 673 F.3d 1207 (9th Cir. 2012) (FIRREA "distinguishes claims on their factual

26   bases rather than the identity of the defendant . . . [and] asks whether claims 'relate to any act or

27   omission' of a failed institution or the FDIC"); *Shaw v. Bank of America Corp.*, 946 F.3d 533,

28   539 (9th Cir. 2019) (affirming *Benson* and rejecting plaintiff's attempt to circumvent FIRREA by

1  bringing claims against assuming bank as it "would encourage the very litigation that FIRREA

2  aimed to avoid").

3          This case reflects a strategic and improper effort by Plaintiffs to avoid FIRREA's

4  mandatory administrative claims process established by Congress for failed banks and instead

5  pursue their claims in arbitration before the Financial Industry Regulatory Authority ("FINRA").

6  The vast majority of Plaintiffs' claims in FINRA are based upon alleged acts and omission of the

7  failed First Republic Bank and its former employee, Arif Ahmed, that occurred *prior to* the

8  bank's failure and FDIC-R's appointment as Receiver on May 1, 2023. While Plaintiffs attempt

9  to diminish this fact, they cannot avoid it. Accordingly, Plaintiffs were statutorily required to

10 submit their claims under the mandatory administrative claims process required by FIRREA.

11 *See* 12 U.S.C. §§ 1821(d)(3)-(6). Their failure to do so deprives any forum—including FINRA—

12 of subject matter jurisdiction to adjudicate such claims. *See McCarthy v. FDIC,* 348 F.3d 1075,

13 1081 (9th Cir. 2003); *In re Parker North American Corp.,* 24 F.3d 1145, 1150 (9th Cir. 1994).[5]

14         Plaintiffs are likely to argue, as they do above, that their claims in FINRA arbitration are

15 not subject to FIRREA because Plaintiffs have not sued the failed First Republic Bank as a

16 defendant in FINRA, and instead strategically named only two First Republic Bank subsidiaries

17 and a former employee of the failed bank. But Plaintiffs' Statement of Claim filed in FINRA

18 confirms that their claims are in fact based on alleged acts or omissions of the failed bank. In

19 particular, Plaintiffs' Statement of Claim alleges claims of fraud against their former financial

20 advisor, Mr. Ahmed, and two former First Republic Bank subsidiaries (First Republic Investment

21 Management, Inc. (FRIM) and First Republic Securities Company, LLC (FRSC)), based on

22 conduct that predominantly occurred *prior to* the failure of First Republic Bank on May 1, 2023

23 and appointment of the FDIC-R as receiver that same date. Such claims—insofar as they are

24 based on conduct that pre-dates First Republic Bank's receivership—necessarily relate to acts or

25 omissions of the failed First Republic Bank, and therefore, are subject to FIRREA and its

26 _____

27 [5] While all claims based upon any alleged acts or omissions that occurred *prior to* May 1, 2023 are subject to and barred by FIRREA for the reasons set forth above, claims based upon post-failure conduct by the former First Republic Bank subsidiaries (*i.e. after* May 1, 2023)

28 presumably would not be barred by FIRREA.

2884084

mandatory administrative claims process. Plaintiffs' attempted end run around the mandates of FIRREA and attempt to plead around FDIC-R is squarely prohibited under FIRREA and binding Ninth Circuit precedent in *Benson* and its progeny.  Because Plaintiffs failed to submit ***any*** claims to FDIC-R by the claims bar date or subsequent submission deadline, no forum has authority to proceed on Plaintiffs' unexhausted claims, including FINRA.

Chase's Statement: Chase joins in the FDIC-R's statement above and also denies any wrongdoing either by Chase or its affiliates.  Chase also notes that, while Ferdowsi purports to seek a declaration from this Court as to the arbitrability of his disputes, he has done all he can to delay these proceedings while simultaneously pressing forward with the arbitration, which is now set to take place in December of 2025 and January of 2026.

IV.    **LEGAL ISSUES**

***Plaintiffs' Statement***:  The legal question at the core of this case is whether Ferdowsi has the right, under his arbitration agreements with JPM Wealth (including as successors in interest to the Subsidiaries), to pursue his FINRA Arbitration against Ahmed and JPM Wealth without interference from Defendants, neither of whom are parties to that Arbitration.  Ferdowsi provides the following list of factual and legal issues in dispute that may bear on that core question, noting that this list is preliminary and subject to revision:

- whether Ferdowsi's claims in the FINRA Arbitration relate to the acts and omissions of the failed First Republic Bank or, instead, whether Ferdowsi's claims relate to the acts and omissions of the failed bank's subsidiaries and their successors (the Subsidiaries and JPM Wealth);

- whether Chase acquired the liabilities of the Subsidiaries under the P&AA;

- whether the FDIC had authority to take the Subsidiaries into any receivership under 12 U.S.C. § 1821(c)(1); and

- whether either or both Defendants are a "real party in interest" to Ferdowsi's FINRA Arbitration and for which parties and which claims or portions thereof.

***Defendants' Statements***:

FDIC-R's Statement: The central issue in this case is whether Plaintiffs' claims in the

11

FINRA arbitration – which are based on alleged acts or omissions of the failed First Republic Bank and occurring **prior to** its failure on May 1, 2023 – are subject to the mandatory administrative claims process under FIRREA. Because the answer is "Yes," and because it is undisputed that Plaintiffs did not submit their claims to the FDIC-R and thus failed to exhaust the administrative claims process that Congress has mandated in FIRREA, Plaintiffs' claims are barred as a matter of law and cannot proceed in any forum, whether in FINRA or on the merits in this Court.

   Chase's Statement:  Chase joins in the FDIC-R's statement above.  Chase also notes that this Court will need to consider whether Ferdowsi's FINRA action should be stayed pending resolution of this case, which Ferdowsi initiated to determine arbitrability.  As noted above, while Ferdowsi purports to seek a declaration from this Court as to the arbitrability of his disputes, he has done all he can to delay these proceedings while simultaneously pressing forward with the arbitration, which is now set to take place in December of 2025 and January of 2026.  If this Court does not resolve the issues presented here in relatively short order, Defendants may need to seek a stay of the arbitration.

## V.     MOTIONS

   ***Plaintiffs' Statement***:  Ferdowsi intends to file a motion for summary judgment but first will need to obtain discovery from Defendants on several issues, including those listed in Section VIII.A.  Given that there are several disputes of material fact that the Court will have to resolve, Ferdowsi proposed to Defendants that the most efficient and expeditious course in this case is for the parties to engage in expedited discovery (six months for fact discovery, and two months for expert discovery) and then file cross-motions for summary judgment.  Defendants insist on just two months of fact discovery, and FDIC-R has suggested it may proceed with an early motion for summary judgment without taking any discovery.  Ferdowsi will oppose any such early motion by the applicable deadlines.

   ***Defendants' Statements***:

   FDIC-R's Statement: FDIC-R intends to file an early motion for summary judgment. This case is a prime example of an action where early motions for summary judgment would avoid the

2884084

unnecessary expenditure of the parties' and the Court's time and resources. Plaintiffs admit that they did not submit their claims to the FDIC-R, and thus failed to exhaust the mandatory administrative claims process under FIRREA. If the Court agrees that Plaintiffs' claims in FINRA are based on alleged acts or omissions of the failed First Republic Bank, then Plaintiffs' claims are barred, and no amount of discovery or strategic pleading will change that conclusion. Moreover, the FDIC-R's intent to file an early motion for summary judgment is aligned with the Honorable Maxine M. Chesney's Standing Order, indicating that a party's "failure to exhaust administrative remedies" may be appropriate for resolution through early dispositive motions practice. *See* Standing Orders for Cases Assigned to Judge Chesney.

Chase's Statement: Chase reserves right to file a motion for summary judgment or join in one filed by FDIC-R and reserves the right to oppose any motion filed by Ferdowsi.

## VI.    AMENDMENT OF PLEADINGS

The parties do not currently anticipate amending their pleadings. The parties agreed that the deadline for amendment of pleadings will be one week after the close of discovery, but the parties disagree on when discovery will close. *See infra* XVI.B.

## VII.    EVIDENCE PRESERVATION

The parties have reviewed this Court's Guidelines Relating to the Discovery of Electronically Stored Information (ESI Guidelines). The parties met and conferred on January 14, 2025, regarding preservation of evidence relevant to the issues in the case, are aware of their obligations, and have taken reasonable steps to preserve potentially relevant evidence.

## VIII.    DISCLOSURES

The parties served Initial Disclosures under Fed. R. Civ. P. 26(a) on February 4, 2025.

## IX.    DISCOVERY

### A.    Scope and Completion of Discovery

The parties agree that discovery is governed by the Federal Rules of Civil Procedure, the Civil Local Rules, and the Court's Standing Order.

***Plaintiffs' Statement***: Completing discovery is necessary before resolving motions for summary judgment in this case. In particular, Defendants' legal theories rely upon factual

1   premises that are disputed.  For example, to support their contention that Ferdowsi's claims in the

2   FINRA arbitration are actually made against First Republic Bank, Defendants assert that Ahmed

3   was acting within "the scope of his employment with First Republic Bank" when he defrauded

4   Ferdowsi.  *See* Dkt. 26 at 7.  Ferdowsi disputes that contention given that Ahmed held himself out

5   to be an agent of the Subsidiaries, not First Republic Bank.  *See, e.g.*, Dkt. 1 ¶¶ 22.  The terms,

6   responsibilities, and dates of Ahmed's employment with the Subsidiaries and/or First Republic

7   Bank may refute Defendants' assertions that Ferdowsi's claims "relate to the acts and omissions

8   of the failed First Republic Bank and its former employee, [Ahmed]."  *See* Dkt. 26 at 7.

9   Information related to this dispute resides with Defendants and Ahmed, and Ferdowsi is entitled

10  to discover it.

11          Similarly, the parties dispute the meaning of the P&AA, including whether, under that

12  agreement, FDIC-R retained the liabilities of the Subsidiaries—while transferring only their

13  assets to Chase—in spite of well-established principles of corporate separateness.  If Ferdowsi is

14  correct that the Subsidiaries were transferred in their entirety and retained their liabilities,

15  Defendants have no basis to argue that any claims against them must have been presented in an

16  FDIC Receivership.  Thus, the negotiation of the P&AA and the assets and liabilities of the

17  Subsidiaries that accrued prior to, and existed on, May 1, 2023, when the transaction occurred, is

18  highly relevant.  This information, too, must be obtained from Defendants through discovery.

19          These are just a few of the disputed factual issues material to the claims in this suit.  Other

20  subjects of discovery Ferdowsi seeks from Defendants include (a) the appointment of FDIC-R as

21  Receiver for First Republic Bank; (b) whether the Subsidiaries were insured depository

22  institutions as of May 1, 2023, that could have been taken into any receivership; (c) any amounts

23  Defendants paid to satisfy liabilities of the Subsidiaries; and (d) any indemnification obligations

24  between Defendants, including under the P&AA.  Despite knowing that these factual issues are in

25  dispute, Defendants have refused to stipulate to anything.

26          FDIC-R's potential early motion for summary judgment would disregard these material

27  disputed facts and ask the Court to decide this matter without relevant information about them.

28  The Court should not rule on that motion without allowing the parties to conduct discovery.

1   Similarly, given the scope of the factual issues in dispute, Defendants' proposal that fact

2   discovery be completed in only two months is unworkable.  Indeed, given that Defendants have

3   not even served discovery on Plaintiffs yet, they cannot seriously contend that fact discovery can

4   close in only two months.  Nor have they acted with a level of alacrity to date that would

5   demonstrate their belief that such an expedited schedule is necessary.[6]  Ferdowsi proposes an

6   accelerated, but realistic, schedule below that allows for fact discovery to be completed in only

7   six months.  This will allow both parties to conduct meaningful written discovery, review

8   responses and productions, and then take the depositions of key witnesses, including the corporate

9   depositions of each Defendant and the deposition of Ahmed.

10   ***Defendants' Statements***:

11   FDIC-R's Statement: None of the discovery Plaintiffs purport to need is necessary to

12   resolve an early motion for summary judgment.  It is undisputed that FDIC-R is the successor as a

13   matter of law to the failed First Republic Bank (by virtue of the FDIC's appointment as Receiver

14   pursuant to 12 U.S.C. § 1821(d)(2)(A)), the FDIC-R succeeded by operation of federal law to all

15   rights, titles, powers, privileges, assets and liabilities of the failed First Republic Bank).  As

16   previously noted, Plaintiffs have conceded that they did not exhaust their claims under FIRREA's

17   mandatory administrative claims process. Insofar as those claims are based on acts and omissions

18   of the failed First Republic Bank, those claims are barred under FIRREA and cannot proceed in

19   FINRA or any other forum. That question can be answered as a matter of law without the

20   discovery proposed by Plaintiffs.

21   Plaintiffs' suggestion that Defendants have somehow delayed anything here is false and

22   disingenuous.  For example, the Defendants' request for a single two-week extension of time to

23   respond to Requests for Production, Interrogatories, and Requests for Admission when, for

24   example, FDIC-R's counsel was suffering from COVID, is hardly a "delay" worth talking about.

25

26

27   [6] For example, Defendants took over two weeks to confirm whether the draft Protective Order
     FDIC-R circulated is agreeable to both Defendants or only to FDIC-R.  And despite the fact that
28   Plaintiffs shared draft versions of all written discovery prior to serving the requests, Defendants
     requested a 15-day extension to respond.

Others of Plaintiffs' statements about what has transpired in this case are false and/or meant to detract attention from the straightforward issues here that the Court needs to resolve.

Chase's Statement: Chase joins in FDIC-R's statement above.  Chase may take limited written discovery.  Should that limited written discovery reveal a need, Chase reserves its right to take depositions as well but believes that, given the way the issues have been framed, discovery should not be necessary as detailed by FDIC-R above.

### B.    Additional Discovery Issues

**Discovery Limitations:**  The parties agree the presumptive discovery limits set forth in the Federal Rules of Civil Procedure are adequate at this time.  The parties will continue to meet and confer on this topic should the circumstances of the case change.

**Production of Electronically Stored Information:**  The parties have reviewed the ESI Guidelines.  The parties do not believe an ESI Protocol is necessary in this case.

**Protective Order and Privilege:**  The parties are meeting and conferring regarding a Stipulated Protective Order consistent with the Northern District of California's Model Protective Order for Standard Litigation, which they will submit to the Court for approval.  The Stipulated Protective Order will address privilege issues, including procedures for the inadvertent production of privileged materials.

**Electronic Service:**  The parties agree that electronic service will count as hand delivery for purpose of all deadlines.

### X.    CLASS ACTION

This case is not a putative class action.

### XI.    RELATED CASES

***Plaintiffs' Statement:***  The parties are aware of other cases involving claims against JPM Wealth arising, at least in part, from the acts and omissions of the Subsidiaries, *see, e.g.*, *Nickel*, No. 4:24-cv-02574-JST (N.D. Cal. Apr. 30, 2024).

***Defendants' Statement:***  *Nickel* is not a related case.  Plaintiffs already filed a motion to deem the two cases related, which was denied by the federal court in *Nickel*.  *See* Dtk. No. 56 (Order by Judge Jon. S. Tigar denying Ferdowsi's motion to relate)

2884084

1

**XII.    RELIEF**

2        **_Plaintiffs' Statement_**:  Ferdowsi seeks a declaratory judgment stating that (a) subject to

3 any contrary finding by the FINRA panel, Ferdowsi has the right to maintain a FINRA

4 Arbitration against Ahmed and JPM Wealth, and (b) Ferdowsi's claims in the FINRA Arbitration

5 are in no way barred or otherwise affected by the fact that those claims were not presented in the

6 administrative claims process of the First Republic Bank Receivership.

7        **_Defendants' Statements_**:

8        FDIC-R's Statement: FDIC-R seeks a declaratory judgment that Plaintiffs' claims – which

9 are based upon acts or omissions of the failed First Republic Bank occurring prior to its failure on

10 May 1, 2023 – are subject to FIRREA and are barred because Plaintiffs failed to exhaust the

11 mandatory administrative claims process.  Accordingly, no forum including FINRA has subject

12 matter jurisdiction to proceed on such claims, and FDIC-R seeks an injunction permanently

13 enjoining the FINRA proceedings for that reason. For the same reason, FDIC-R will seek

14 dismissal of Plaintiffs' single cause of action for declaratory judgment.

15        Chase's Statement: Chase has not sought affirmative relief in this case; it does not oppose

16 – and supports – FDIC-R's claims.  It asks that Plaintiffs' declaratory judgment be denied and

17 that the Court order that Plaintiffs are barred from pursuing their claims based upon acts or

18 omissions occurring prior to the failure of First Republic Bank on May 1, 2023 in FINRA

19 arbitration, or in any other proceeding, because those claims were not presented in the mandatory

20 administrative claims process subject to FIRREA.

21

**XIII.    SETTLEMENT AND ADR**

22        Ferdowsi filed an ADR Certification on March 7, 2025 (Dkt. 41).  Defendants will file

23 their ADR Certifications.  The parties agree that engaging in any ADR process would be

24 premature at this time, and if such efforts become appropriate, they will engage a mediator.

25

**XIV.    OTHER REFERENCES**

26        The parties agree that this case is not suitable for binding arbitration, a special master, or

27 the Judicial Panel on Multidistrict Litigation at this time.  Ferdowsi does not oppose having

28 discovery disputes heard by a magistrate judge, as required by this Court's Standing Order.

Defendants oppose having discovery disputes heard by a magistrate judge, as it believes that any discovery disputes would be better resolved by this Court to facilitate a quick resolution of this action.

## XV.    NARROWING OF ISSUES

No issues have been narrowed by agreement or motion.

***Plaintiffs' Statement:***  Ferdowsi attempted to narrow the issues by asking FDIC-R to confirm it does not purport to be a real party in interest to defend the portions of Ferdowsi's claims in the FINRA Arbitration that accrued after the Subsidiaries were transferred to Chase on May 1, 2023—*i.e.*, after any point in time in which FDIC-R could reasonably contend that it retained ownership of the Subsidiaries' liabilities.  FDIC-R has not responded to Ferdowsi's request, stating only—in a footnote in this Joint Statement—that claims based upon post-failure conduct "presumably would not be barred by FIRREA."  *See infra* n.5.  Ferdowsi remains available to discuss whether FDIC-R will commit to, rather than presume, this position.

***Defendants' Statement:*** An early motion for summary judgment on Plaintiffs' failure to exhaust remedies will resolve this entire case.  Because Ferdowsi has conceded that he failed to exhaust the mandatory administrative claims process, Ferdowsi's claims in FINRA are barred as a matter of law by FIRREA, and no court or tribunal including FINRA has subject matter jurisdiction over those claims.

## XVI.    SCHEDULING

### A.    Expedited Trial Procedures (General Order 64)

***Plaintiffs' Position***:  Ferdowsi does not agree that this Action is appropriate for the Expedited Trial Procedure of General Order 64.

***Defendants' Position***:  Defendants propose an expedited trial as set forth above, and in their proposal below assuming that Ferdowsi refuses to continue the FINRA hearing date.

### B.    Case Schedule

The parties met and conferred regarding the case schedule but were unable to come to an agreement.  The parties' competing proposals are below.

2884084

|  | **Plaintiffs' Proposal** | **Defendants' Proposal** |
|---|---|---|
| Fact Discovery Cut-Off | Friday, September 19, 2025 | Friday, May 9, 2025 |
| Amendment of Pleadings Cut-Off | Friday, September 26, 2025 | Friday, May 16, 2025 |
| Expert Disclosures Due | Friday, October 3, 2025 | Friday, May 16, 2025 |
| Expert Rebuttals Due | Friday, October 17, 2025 | Friday, June 6, 2025 |
| Expert Discovery Cut-Off | Friday, November 7, 2025 | Tuesday, July 1, 2025 |
| Dispositive Motions Due | Monday, November 24, 2025 | Friday, August 1, 2025 |
| Oppositions to Dispositive Motions Due | Monday, December 15, 2025 | Friday, August 15, 2025 |
| Replies to Dispositive Motions Due | Monday, December 22, 2025 | Friday, August 22, 2025 |
| Dispositive Motions Heard | Friday, January 16, 2026 | Friday, September 5, 2025 |
| Pretrial Conference | At the Court's convenience after ruling on cross-motions for summary judgment | Tuesday, September 23, 2025 |
| Trial (bench) | At the Court's convenience after ruling on cross-motions for summary judgment | Monday, September 29, 2025 |

## XVII. TRIAL

**_Plaintiffs' Position:_**  Plaintiffs believe the Court should set a trial date, if necessary, after the resolution of summary judgment.  Defendants do not have any basis to seek a stay of the FINRA Arbitration now, and in any event, this Court already denied FDIC-R's identical request. *See Ferdowsi II*, Dkt. 24 (denying "administrative motion" for "stay [of] the underlying FINRA arbitration").

**_Defendants' Position:_**  Defendants propose a bench trial to begin on September 29, 2025, so that a final order in this case may be issued sufficient in advance of the FINRA arbitration set to commence on December 8, 2025.  If Ferdowsi insists on a later trial of this matter, then the Court should stay the pending FINRA arbitration to which this case relates until trial can be completed – a resolution Defendants would not oppose.

The suggestion that this Court denied a stay of arbitration in *Ferdowsi II* is misleading.  In that matter, the Court's analysis dealt with whether FDIC-R had the ability to remove that case

19

2884084

1  from FINRA under the special removal powers granted to FDIC-R.  It in no way addressed or

2  resolved whether a stay of the FINRA arbitration was appropriate in light of the fact that this

3  Court, in this action, is being specifically asked to resolve whether the arbitration should go

4  forward.

5  **XVIII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

6      Ferdowsi filed a Certification of Interested Entities or Persons on August 13, 2024

7  (Dkt. 12).  The FDIC-R is not required to file a Certification.

8  **XIX.    PROFESSIONAL CONDUCT**

9      All attorneys of record for the parties have reviewed the Guidelines for Professional

10  Conduct for the Northern District of California.

11  **XX.    OTHER MATTERS**

12      The parties are not aware of other matters that may facilitate resolution of the case.

13  Dated:  March 7, 2025                    **KEKER, VAN NEST & PETERS LLP**

14

15                              By:   */s/ Eric H. MacMichael*
                                    ELLIOT R. PETERS
16                                  ERIC H. MACMICHAEL
                                    FRANCO E. MUZZIO
17                                  MAILE YEATS-ROWE
                                    PAUL VON AUTENRIED
18
                                    Attorneys for Plaintiffs ARASH
19                                  FERDOWSI and ARASH FERDOWSI
                                    REVOCABLE TRUST
20

21  Dated:  March 7, 2025                    **GREENBERG TRAURIG, LLP**

22                              By:   */s/ Karin L. Bohmholdt*
23                                  KARIN L. BOHMHOLDT
                                    NOUR HAMIDA
24
                                    Attorneys for JPMORGAN CHASE
25                                  BANK, N.A.

26

27

28

2884084

1  Dated:  March 7, 2025                        **BALLARD SPAHR LLP**

2                                      By:   */s/ Scott S. Humphreys*

3                                            SCOTT S. HUMPHREYS
                                            BRIANNA R. HOWARD

4
                                            Attorneys for FEDERAL DEPOSIT
5                                            INSURANCE CORPORATION AS
                                            RECEIVER FOR FIRST REPUBLIC
6                                            BANK

7

8            **ATTESTATION PURSUANT TO CIVIL L.R. 5-1**

9          The filer attests that the other signatories listed, on whose behalf the filing is also

10   submitted, concur in the filing's content and have authorized the filing.

11   Dated:  March 7, 2025                     /s/ Eric H. MacMichael

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2884084