1

2

3

4

5                      IN THE UNITED STATES DISTRICT COURT

6                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    ARASH FERDOWSI, et al.,                  Case No.  24-cv-04644-MMC

                 Plaintiffs,
9
                                             **ORDER DIRECTING PARTIES TO**
10        v.                                 **SHOW CAUSE WHY ACTION**
                                             **SHOULD NOT BE DISMISSED**
11   JPMORGAN CHASE BANK, N.A., et al.,

12               Defendants.

13   FEDERAL DEPOSIT INSURANCE
     CORPORATION, AS RECEIVER FOR
14   FIRST REPUBLIC BANK,

                 Counterclaimant,
15
          v.
16   ARASH FERDOWSI, et al.,

17               Counterclaim Defendants.

18

19        On March 14, 2025, the Court conducted a case management conference, at

20   which time the Court advised the parties of its intent to issue a written order directing the

21   parties to show cause why the above-titled action should not be dismissed.

22        Having reviewed all filings to date, as well as the comments made by counsel at

23   the case management conference, the Court will, for the reasons stated below, direct the

24   parties to show cause why the instant action, consisting of (1) plaintiffs Arash Ferdowsi

25   and Arash Ferdowsi Revocable Trust's (collectively, "Ferdowsi") Complaint for

26   Declaratory Judgment and (2) defendant/counterclaimant Federal Deposit Insurance

27   Corporation, as Receiver for First Republic Bank's ("FDIC-R") Counterclaims, should not

28   //

United States District Court
Northern District of California

be dismissed.[1]

## BACKGROUND

### A. Ferdowsi's Complaint

The following factual allegations, contained in the Complaint, are assumed true for purposes of the instant Order.

On January 9, 2020, Ferdowsi entered into a contract, titled Investment Management Agreement, with First Republic Investment Management, Inc. ("FRIM"), which contract "govern[ed] multiple accounts, including that of the Arash Ferdowsi Revocable Trust ['Trust']" and which included an arbitration agreement, providing that any disputes the parties have will be resolved through arbitration. (See Compl. ¶ 23.) Additionally, on January 9, 2020, Ferdowsi, in his capacity as trustee of the Trust, signed a Trust Account Application to set up a brokerage account with First Republic Securities Company, LLC ("FRSC"); the Application includes an arbitration agreement, providing that any disputes the parties have will be resolved through arbitration. (See Compl. ¶ 24.) At the time Ferdowsi entered into the above-referenced arbitration agreements, FRIM and FRSC were wholly owned subsidiaries of First Republic Bank. (See Compl. ¶ 5.) Subsequently, on May 1, 2023, First Republic Bank "failed" and was "sold" by the FDIC-R to Chase Bank, which, that same date, "acquired" from the FDIC-R, as "assets of First Republic Bank," the "shares" First Republic Bank had held in FRIM and FRSC. (See Compl. ¶¶ 5, 33.)

On July 30, 2024, Ferdowsi instituted an arbitration proceeding by filing with the Financial Industry Regulatory Authority ("FINRA") a Statement of Claim, naming as a respondent Arif Ahmed ("Ahmed"), a "registered investment advisor," as well as two entities, specifically, JPMorgan Private Wealth Advisors LLC ("JPMPWA"), the successor to FRIM, and JPMorgan Securities LLC ("JPMS"), the successor to FRSC, which entities

---

[1] The remaining party in the instant action, defendant JPMorgan Chase Bank, N.A. ("Chase Bank"), does not seek affirmative relief, but does seek resolution in its favor of the claims asserted in Ferdowsi's Complaint.

United States District Court
Northern District of California

are, respectively, an "investment advisory firm" and a "broker-dealer."  (See Compl. Ex. A ¶ 1.)  In said arbitration proceeding, Ferdowsi asserts seven Counts, each arising from his allegation that Ahmed, as well as JPMPWA and JPMS (collectively, "JPM Wealth"), beginning in April 2020 and ending in October 2023 (see Compl. Ex. A ¶ 2), "plac[ed] their financial interests ahead of . . . Ferdowsi's by steering him into MLIs [Market-Linked Investments] that allowed them to collect excessive fees" (see Compl. Ex. A ¶ 30), which conduct the respondents assertedly "conceal[ed]" from Ferdowsi (see Compl. Ex. A ¶ 49) and assertedly caused him losses of "over $225 million [dollars]" (see Compl. Ex. A ¶ 76).

Prior to filing his arbitration claim, however, Ferdowsi, in February 2024, "demanded in writing" that JPM Wealth compensate him for his asserted losses, and, in response thereto, "JPMorgan's counsel" stated that "the FDIC retained liability for this matter, has granted indemnity to JPM, and is the real party in interest."  (See Compl. ¶ 43.)[2]

In light thereof, Ferdowsi, by the instant action, asserts that, (1) "[s]ubject to any contrary finding by the FINRA arbitrator, Ferdowsi has the right under his arbitration agreements with JPM Wealth to bring and maintain a FINRA Arbitration against JPM Wealth to resolve the controversies and claims in the FINRA Arbitration" and (2) "Ferdowsi's FINRA Arbitration and the claims that Ferdowsi asserts therein are in no way barred or otherwise affected by the fact that those claims were not presented in the administrative claims process of the First Republic Bank Receivership."  (See Compl., Prayer for Relief ¶ 1.)

**B. FDIC-R's Counterclaims**

The following factual allegations, contained in the Counterclaims, are assumed true for purposes of the instant Order.

On May 1, 2023, (1) the Commissioner of the Financial Protection and Innovation

---

[2] Ferdowsi understood such response to be a contention that his "claims must be brought as part of the FDIC administrative claims process and [could] only be asserted against the FDIC."  (See Compl. ¶ 44.)

of the State of California ("the Commissioner") "took possession of the property and business of First Republic Bank . . . and ordered that the [b]ank be liquidated" (see Countercl. Ex. 1 at 1); (2) the Commissioner "appoint[ed] and tender[ed] to the [FDIC-R] the appointment as receiver of [First Republic] Bank" (see id.); (3) the FDIC-R accepted the appointment (see Countercl. Ex. 1 at 2), and "succeeded by operation of federal law to all rights, title, powers, privileges, assets[,] and liabilities" of First Republic Bank (see Countercl. ¶ 6); and (4) the FDIC-R "entered into a Purchase and Assumption Agreement with Chase Bank, under which the FDIC-R transferred to Chase Bank "substantially all assets" of First Republic Bank, including FRSC and FRIM (see Countercl. ¶ 7), but did not transfer to Chase Bank the "liabilities" of FRSC and FRIM, which it "retained" for itself (see id.).

Thereafter, the FDIC-R "published notice to all creditors or potential claimants against the failed First Republic Bank of the requirement to submit claims and comply with [an] administrative claims process" before a deadline of September 5, 2023. (See Countercl. first ¶ 12.)[3]  Ferdowsi did not submit a claim to the FDIC-R by the September 5, 2023, deadline. (See Countercl. first ¶ 13.)

In February 2024, Ferdowsi "submitted a demand letter to Chase," which forwarded the letter to the FDIC-R. (See id.)  On February 15, 2024, the FDIC-R sent to Ferdowsi a document titled "Notice to Discovered Claimant to Present Proof of Claim," stating therein it had "discovered that [Ferdowsi] may have a claim against the Failed Institution," i.e., First Republic Bank, setting forth the showing that must be made to submit a claim after the deadline, and indicating that a "late-filed claim" had to be submitted no later than May 15, 2024. (See Countercl. Ex. 3.)  Ferdowsi did not submit a claim by May 15, 2024. (See Countercl. first ¶ 13.)  Instead, Ferdowsi initiated the above-referenced arbitration proceeding against against JPMPWA, JPMS (see Countercl. first ¶ 14), and Ahmed, who, the FDIC-R asserts, was an employee of First

---

[3] The Counterclaims include two sets of paragraphs denominated ¶¶ 11-16.

4

1  Republic Bank (see Countercl. first ¶ 14, second ¶ 11),  Thereafter, on October 9, 2024,

2  the FDIC-R filed in the arbitration proceeding a "Notice of Substitution," whereby it

3  contended it was the "real party in interest to defend against [Ferdowsi's] claims based

4  upon alleged acts and omissions occurring prior to the May 1, 2023[,] failure of First

5  Republic Bank."  (See Countercl. second ¶ 16.)

6      Based on the above, the FDIC-R contends it is entitled to a declaratory judgment

7  that Ferdowsi is "barred" from "maintaining and pursuing [his] claims relating to acts or

8  omissions prior to the failure of First Republic Bank on May 1, 2023, in FINRA arbitration

9  or any other proceeding other than this Court."  (See Countercl., Prayer for Relief ¶ A.)

10 Additionally, the FDIC-R contends it is entitled to a permanent injunction imposing such a

11 bar.  (See Countercl., Prayer for Relief ¶ B.)

12 **C.  Joint Case Management Statement**

13     The Court accepts, as accurate, the following factual assertions that are included

14 in the Joint Case Management Statement filed March 7, 2025, and have not been

15 disputed therein or at the conference:  (1) the FDIC-R's Notice of Substitution, filed in the

16 arbitration proceeding, was not accepted by FINRA (see Statement at 1:23-24, 26) and

17 the arbitration is set to begin on December 8, 2025, and to conclude on January 16, 2026

18 (see id. at 3:24).

19                                   **DISCUSSION**

20     The Court has fully reviewed the matter, and, for the reasons set forth below, it

21 would appear that the Court lacks subject matter jurisdiction to consider the claims made

22 in the Complaint and in the Counterclaims.

23     Under Article III of the Constitution, "federal courts are limited to deciding 'cases'

24 and 'controversies.'"  See Bova v. City of Medford, 564 F.3d 1093, 1095 (9th Cir. 2009).

25 "Two components of the Article III case or controversy requirement are standing and

26 ripeness."  Id. at 1096.  "[A] claim is not ripe for adjudication if it rests upon contingent

27 future events that may not occur as anticipated, or indeed may not occur at all."  Id.

28 (internal quotation and citation omitted). "That is so because, if the contingent events do

1  not occur, the plaintiff likely will not have suffered an injury that is concrete and

2  particularized enough to establish the first element of standing." Id.

3      The Court next considers whether the claims made by Ferdowsi, in his Complaint,

4  and by the FDIC-R, in its Counterclaims, are ripe.

5      As noted, Ferdowsi, in his Complaint, seeks two declarations, namely, that he has

6  the "right" to "bring and maintain" in arbitration the seven Counts he has asserted therein

7  against JPM Wealth and Ahmed and that said Counts are not "barred" by his failure to

8  present an administrative claim to the FDIC-R. (See Compl., Prayer for Relief ¶ 1.) In its

9  Counterclaims, the FDIC-R asserts what it characterizes as "essentially a mirror image"

10  of Ferdowsi's claims. (See Joint Case Management Statement at 3:13-14.)

11      The filings to date indicate that the parties to the instant action disagree as to

12  whether JPM Wealth can be held liable for conduct by its predecessors FRIM and FRSC

13  occurring prior to the failure of First Republic Bank and whether Ahmed was employed by

14  JPM Wealth. In particular, the defendants take the position here, and presumably, the

15  respondents in the arbitration proceedings have taken or will take the position there, that

16  only the FDIC-R can be held responsible for such conduct.

17      Whatever action the arbitrator ultimately takes as to such issue, however, remains

18  to be seen, and, consequently, it appears that, until those "contingent events occur,

19  neither [party] will have suffered an injury that is concrete and particularized enough to

20  survive the standing/ripeness inquiry." See Bova, 564 F.3d at 1097. Moreover, even if

21  either party were to demonstrate a cognizable injury, it appears that the Court lacks

22  jurisdiction to redress it. See id. at 1096 (noting, "[t]o have standing, a plaintiff must have

23  suffered an injury . . . that can be redressed by a favorable decision of the court"). To

24  date, neither Ferdowsi nor the FDIC-R has cited to any case holding or statute providing

25  that a district court has the authority to intervene in a pending arbitration for the purposes

26  sought. Indeed, the cases that have had occasion to address the question of intervention

27  have found the district court lacked such authority. See Aerojet-General Corp. v.

28  American Arbitration Ass'n, 478 F.2d 248, 251 (9th Cir. 1973) (finding district court erred

United States District Court
Northern District of California

in enjoining arbitrator from proceeding to arbitrate in defendant's chosen forum; noting "judicial review prior to the rendition of a final arbitration award should be indulged, *if at all*, only in the most extreme cases") (emphasis added); see also In re Sussex, 781 F.3d 1065, 1072-73 (9th Cir. 2015) (holding district court erred in removing arbitrator from ongoing arbitration; noting in years since Aerojet-General's 1973 decision leaving open possibility of judicial review prior to rendition of final arbitration award, Ninth Circuit has "never . . . subsequently approved of such an intervention"); Blue Cross Blue Shield of Mass. v. BCS Ins. Co., 671 F.3d 635, 638 (7th Cir. 2011) (holding "judges must not intervene in pending arbitration [proceedings] to direct arbitrators to resolve an issue one way rather than another").

## CONCLUSION

For the reasons stated above, the parties are hereby DIRECTED TO SHOW CAUSE, in writing and no later than April 16, 2025, why the above-titled action should not be dismissed for lack of subject matter jurisdiction.  As of April 16, 2025, the Court will take the matter under submission, unless the parties are advised that further briefing and/or oral argument would be of assistance.

**IT IS SO ORDERED.**

Dated: March 26, 2025

MAXINE M. CHESNEY
United States District Judge

7